STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

14-45

BELINDA LAYSSARD STOKES

VERSUS

DORIS BARNHART LAYSSARD

**********
APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, DOCKET NO. 244,874-C
HONORABLE MARY L. DOGGETT, DISTRICT JUDGE
**********

SYLVIA R. COOKS
JUDGE

**********

Court composed of Sylvia R. Cooks, Marc T. Amy and J. David Painter, Judges.

AFFIRMED.

William Alan Pesnell
The Pesnell Law Firm, APLC
400 Travis Street, Suite 1100
P.O. Box 1794
Shreveport, LA 71101
(318) 226-5577
**ATTORNEY FOR PLAINTIFF/APPELLANT**
    Belinda Layssard Stokes

William M. Ford
The Ford Law Firm
1630 Metro Drive
Alexandria, LA 71301
(318) 442-8899
**ATTORNEY FOR DEFENDANT/APPELLEE**
    Doris Barnhart Layssard

**COOKS, Judge.**

This appeal involves a petition to annul a donation *inter vivos* and for damages resulting filed by the plaintiff, Belinda Layssard Stokes (hereafter Ms. Stokes) against the defendant, Doris Barnhart Layssard (hereafter Ms. Layssard). The petition sought an annulment of a purported donation of Ms. Stokes' interest in a tract of land and for damages resulting from the conversion subject thereto. The disputed donation concerns Ms. Stokes' interest in a tract of land which she inherited from her father. Ms. Layssard also filed a reconventional demand seeking reimbursement from Ms. Stokes, alleging she was indebted to her for $3,561.88.

The facts involving the dispute are as follows. Ms. Layssard was married to Walter Layssard, of which union seven children were born, including Ms. Stokes. During the marriage, the Layssards purchased a ten acre tract of land in Rapides Parish, which served as the family home.

Walter Layssard died in 1978, and was survived by his wife and their seven children. Ms. Layssard married again in 1992, but was divorced shortly thereafter. Due to her remarriage, she lost her usufruct over Walter Layssard's share of the community property.

One of the children, Richard Layssard, transferred his interest in the property to his mother. On January 10, 2005, Ms. Layssard had all of her other children to the family home for lunch and the children purportedly signed a document transferring each child's interest in the property to her. All six remaining children acknowledged they signed the donation on that date, including Ms. Stokes. The donation was also signed by two witnesses and a notary public.

Ms. Stokes did not deny her signature on the donation. However, she disputes its legal validity on two grounds: (1) She did not sign the document in the presence of the witnesses and notary and (2) she did not understand the document,

2

asserting she believed it contained a transfer of land from her to her brother, Daryl J. Layssard, rather than a transfer of her interest in the property to her mother. Specifically, Ms. Stokes testified she did sign the document on that date, but only in the presence of her mother and one sibling, her brother, Daryl. Furthermore, she stated the other siblings and her mother signed the document prior to her arrival.

Daryl Layssard testified on Ms. Stokes' behalf. He stated he picked Ms. Stokes up on the morning of January 10, 2005, and drove her to their mother's house for the purpose of executing a donation. Like Ms. Stokes, Daryl testified he believed the document would transfer property from his sister to him. Daryl also corroborated Ms. Stokes' testimony that Ms. Layssard was the only other person present when Ms. Stokes signed the document.

To the contrary, Ms. Layssard testified the document was signed at her home during the lunch hour by all the children, and in the presence of the witnesses and notary. Ms. Layssard testified she chose that time so all her children could be present.

Four of the other siblings also testified regarding the purported execution of the donation: Diane Layssard Ducote, Walter Layssard, Robert Layssard and Debra Layssard Johnson. They all confirmed they signed the document at their mother's home during the lunch hour. They also testified to seeing Ms. Stokes arrive at the home with their brother Daryl, while the witnesses and notary were present. While the siblings were unable to remember Ms. Stokes actually signing the document, they did remember seeing all the siblings' signatures on the document on that day. It was acknowledged at trial by Ms. Stokes, that she only had a good relationship with her brother Daryl and there was significant animosity between her and the other siblings.

Both the witnesses and the notary testified due to the event being eight years ago, they were unable to specifically recall Ms. Stokes signing the document.

3

However, each testified being at Ms. Layssard's house for the purpose of executing the donation. Mrs. Jennifer Peterman, the notary, testified she recalled the meeting being at noon in order to get the children together at one time. She stated it was her practice to witness all signatures and ask each signatory if he or she understood the document. Mrs. Peterman maintained she would not have notarized the document if she had not actually witnessed each signature.

The trial court noted in its written reasons for judgment that it was undisputed that the document in question appears from its face to be a properly executed authentic act. Thus, it is presumed to be valid and Ms. Stokes must present strong and convincing proof to overcome that presumption. The trial court concluded "the overwhelming majority of evidence at trial contradicts Ms. Stokes' evidence and favors [Ms. Layssard's] version of events surrounding the proper execution of the donation." Accordingly, the trial court denied Ms. Stokes' petition to annul.

Ms. Stokes also sought reimbursement from Ms. Layssard for improvements made to the land and for damages due to the loss of her trailer. The trial court denied the claim for reimbursement, finding the improvements specified by Ms. Stokes (a utility pole, a sewerage treatment plant and a water system) were incorporated into the land, so as to become component parts of the land. Thus, under La.Civ.Code art. 469, the transfer of an immovable includes a transfer of its component parts.

The trial court also denied Ms. Stokes' claim for damages for the loss of her mobile home. The trial court noted Ms. Stokes was evicted from the property on September 6, 2011. Although Ms. Stokes alleged in her petition the eviction was wrongful, she acknowledged it was never appealed. Thus, for purposes of the proceedings before the trial court, the eviction was deemed lawful. The trial court then noted La.Civ.Code art. 2707 provides a lessor with a privilege on a lessee's

4

movables that are found upon the leased property at the time of a lawful eviction. The trial court also determined there was no evidence in the record to indicate a proper declaration of intent that the mobile home shall remain permanently attached to the land under La.R.S. 32:710. Thus, the trial court found the mobile home was movable property which was legally removed by Ms. Layssard after the lawful eviction.

Lastly, the trial court denied Ms. Layssard's reconventional demand seeking reimbursement from Ms. Stokes, finding the reconventional demand was filed more than three years from the last credit entry on the account between the two. Thus, the three-year prescriptive period set forth in La.Civ.Code art. 3494 had prescribed.

Ms. Stokes has timely appealed the trial court's judgment, setting forth the following lone assignment of error:

> (1)    The trial court erred by failing to give proper weight to the testimony of the witnesses and by relying on the testimony of witnesses with no recollection of events, contrary to the direct, positive testimony of two witnesses corroborated by independent documentation.

The denial of Ms. Stokes' claims for reimbursement and damages, as well as the denial of Ms. Layssard's reconventional demand have not been appealed.

## ANALYSIS

Ms. Stokes bases her petition to annul on the grounds that the donation in question was not a properly executed authentic act. Louisiana Civil Code Article 1833 defines an authentic act, in pertinent part, as follows:

> A.  An authentic act is a writing executed before a notary public or other officer authorized to perform that function, in the presence of two witnesses, and signed by each party who executed it, by each witness, and by each notary public before whom it was executed. . .
>
> B.  To be an authentic act, the writing need not be executed at one time or place, or before the same notary public or in the presence of the same witnesses, provided that each party who executes it does so before a notary public or other officer authorized to perform that

5

function, and in the presence of two witnesses and each party, each witness, and each notary public signs it. . .

"[A]uthentic acts are presumed to be valid and a party asserting otherwise must present strong and convincing proof of such magnitude as to overcome this presumption." *Wiedemann v. Weidemann*, 09-41, p. 4 (La.App. 5 Cir. 12/29/09), 30 So.3d 972, 974, (citing *Meltzer v. Meltzer*, 95-551, 95-552 (La.App. 4 Cir. 9/28/95), 662 So.2d 58, *writ denied*, 95-2616 (La. 1/5/96), 666 So.2d 293), *writ denied*, 10-242 (La. 4/9/10), 31 So.3d 390. It is undisputed that the donation in question in this case is in proper form and is therefore presumed to be valid. Thus, Ms. Stokes was required to present "strong and convincing proof" to overcome the presumption of validity. After a thorough review of the record, we cannot say the trial court erred in finding she failed to meet this burden.

In her brief to this court, Ms. Stokes states she signed the document outside the presence of the notary and the witnesses, as did the other signatories. She states on the date in question she "was awakened after her shift at Proctor and Gamble, by [her brother Daryl Layssard], and they went to [Ms. Layssard's] home between 6 and 7 am." Ms. Stokes maintains she was told the document was executed to give property to her brother, not to donate everything to her mother. In brief, Ms. Stokes states she "went back to her home to rest, and get ready to go to court that day for her divorce." However, there is no mention during her testimony at trial as to any court appearance on that day. Daryl Layssard gave similar testimony to his sister, largely corroborating her version of events.

Mrs. Layssard testified she prepared a lunch for her children on January 10, 2005, in order to gather them in one place so that her children could sign the donation transferring their interest in the property to her. She stated she had a clear recollection of the events of the day, and that each of her children signed the document in the presence of the notary and the witnesses. She maintained during

6

cross-examination that she saw Ms. Stokes and Daryl Layssard sign the document while in the presence of the notary and witnesses.

Of particular relevance was the testimony of Ms. Jennifer Peterman, who was the notary public. She acknowledged "it's been a while" since the event and noted she did not "remember the day very well but it is a standard practice for everyone to sign in my presence." Ms. Peterman corroborated Ms. Layssard's testimony that the signing occurred "around noon time" and that there was "quite a spread that day." She also recalled Ms. Layssard "had tried to arrange the document to be signed 2 to 3 times previous to that but it had not worked out." On cross-examination, Mr. Peterman again acknowledged she did not have an independent recollection of Ms. Stokes signing the document, but would not have notarized it if she had not witnesses her signing.

Richard Witz, one of the two witnesses who signed the donation, testified he "did witness the, uh, signatures and of course after everybody signed, that's when we signed." Mr. Witz maintained each of the signatories to the donation signed in his presence.

Ms. Stokes relied heavily on the fact that many of the witnesses who testified did not have clear recollections of the events of January 10, 2005. This is not surprising considering approximately eight years passed from that day to the trial on this matter. The court in *Wiedemann* noted the requirement to overcome the presumption of authenticity by strong and convincing proof is "especially true when the passage of time has blurred memories." *Wiedemann*, 30 So.3d at 974.

The trial court also specifically noted "[Ms.] Stokes' story conflicted on several points," and that the "majority of evidence at trial contradicts Ms. Stokes' evidence and favors [Ms. Layssard's] version of events surrounding the proper execution of the donation." Such credibility calls and factual determinations are the sole province of the trier of fact, and it is not appropriate for an appellate court

7

to substitute its opinion unless we find manifest error.  *Cosby v. Holcomb Trucking, Inc.*, 05-470 (La. 9/6/06), 942 So.2d 471.   Our review of the record, reveals no manifest error in the trial court's factual determinations.

## DECREE

For the foregoing reasons, the lower court judgment is affirmed.  All costs of this appeal are assessed to plaintiff-appellant, Belinda Layssard Stokes.

**AFFIRMED.**